UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| PAM J. SMITH and ) | |
| GLORIA CLIFTON, ) | |
|    Plaintiffs ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| v. ) | Case No. 1:08cv00053 |
| ) | |
| UNITED SALT CORPORATION and ) | |
| MICHAEL FOSTER, ) | |
|    Defendants ) | |

*I.*

The case is currently before the court on the Defendant's Motion To Enjoin Ex Parte Contacts, (Docket Item No. 30), the plaintiffs' Motion To Compel Discovery, (Docket Item No. 25), the plaintiffs' Motion To Enjoin And Restrain, (Docket Item No. 45), the plaintiffs' Motions To Quash Or Modify Subpoenas For Production Of Documents, (Docket Item Nos. 51, 57), the plaintiffs' Motion For Finding Of Contempt And To Compel Discovery, (Docket Item No. 55), and the Defendant United Salt Corporation's Motion To Compel, (Docket Item No. 58), (collectively "Motions"). These Motions were heard on September 1, 2009. The matter also is before the court on the defendant Michael Foster's pro se motion for extension of time to complete discovery, (Docket Item No. 62). Based on the written arguments and representations, as well as those advanced at the September 1, 2009, hearing, and for the reasons set forth below, I will grant in part and deny in part the Motion To Enjoin Ex Parte Contacts, grant in part and deny in part the Motion to Enjoin And Restrain, deny the Motions To Quash Or Modify Subpoenas For Production Of Documents, grant in part and deny in part the Motion For Finding Of Contempt And To Compel

-1-

Discovery, grant in part and deny in part the parties' motions to compel, and deny defendant Michael Foster's motion for extension.

The relevant facts are as follows. The plaintiffs allege in their Complaint that, while employed at United Salt Corporation's, ("United Salt"), Saltville, Virginia, facility, they were sexually harassed, discriminated against on the basis of their gender, were retaliated against, were constructively and/or wrongly discharged and were subjected to assault and battery by defendant, Michael Foster, the plant manager at United Salt's Saltville facility, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq*. and Virginia common law.

*II.*

*A. Defendant's Motion to Enjoin Ex Parte Contacts*

I first will address the Defendant's Motion To Enjoin Ex Parte Contacts (Docket Item No. 30.) In this motion, the defendant, United Salt, asks that the court enjoin the plaintiffs and their counsel from making any ex parte contacts with any of its current employees. They contend that the plaintiffs' counsel made clear in the Motion To Compel Discovery, (Docket Item No. 25), that he intends to contact United Salt employees ex parte.[1] The plaintiffs argue that it is important to speak with these employees because during the workday and while present on United Salt's premises,

---

[1]In the Motion To Compel Discovery, plaintiffs' counsel states as follows: "In Defendant's Rule 26 Disclosures . . . , defendant provided the names of 13 persons. Similarly in response to INT/RPD No. 10 and 18 . . . defendant provided the names of 40 persons. In a deliberate attempt to *prevent plaintiff from contacting these persons*, however, defendants (1) failed to provide a single address or telephone number. . . ." (Emphasis added).

-2-

other employees may have learned of information relevant to the plaintiffs' allegations that defendant Foster sexually harassed them at work and that United Salt is liable for the sexual harassment. The plaintiffs have not specifically named which employees they wish to contact, reportedly due to United Salt's failure to fully answer discovery. However, the plaintiffs contend that their intent in seeking ex parte communications with current employees of United Salt is not to obtain admissions imputable to the corporation. Instead, they state that they are merely attempting to gather information relevant to the incidents of sexual harassment that occurred on the premises of United Salt.

United Salt argues that the court's prior holding in *Lewis v. CSX Transp., Inc.,* 202 F.R.D. 464 (W.D. Va. 2001), is controlling. The plaintiffs rely on case law from outside of this district, in addition to Rule 4.2 of the Virginia Rules of Professional Conduct, for the proposition that they may contact ex parte nonmanagerial employees of United Salt. Rule 4.2 of the Virginia Rules of Professional Conduct states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rules of Supreme Court of Virginia Pt. 6, § II, Rule 4.2 (2000). Plaintiffs' counsel argues that Comment $7^2$ to Rule 4.2 addresses the particular issue before the court. Comment 4 provides as follows:

---

[2] The comment to which the plaintiffs refer as Comment 7 is actually Comment 4 to the most current version of the Virginia Rules of Professional Conduct.

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons in the organization's "control group"as defined in *Upjohn v. United States*, 449 U.S. 383 (1981)[3] or persons who may be regarded as the "alter ego"of the organization. The "control group" test prohibits *ex parte* communications with any employee of an organization who, because of their status or position, have the authority to bind the corporation. Such employees may only be contacted with the consent of the organization's counsel, through formal discovery or as authorized by law.

The plaintiffs seize on the language in Comment 4 regarding the authority to bind the corporation, arguing that the employees he seeks to contact ex parte do not have such authority and, therefore, they are not included in the organization's "control group" and do not fall within the ambit of Rule 4.2.

This court in *Lewis*, however, held that the Federal Rules of Evidence, in particular Federal Rules of Evidence Rule 801(d)(2)(D), required a broader test to decide whether a plaintiff's counsel may make ex parte contacts with a corporate defendant's employees. In *Lewis*, the court noted that, while it utilizes the Rules of Professional Conduct it, nevertheless, must "look to federal law in order to interpret and apply those rules" and should not "abdicate to the state's view of what constitutes professional conduct even in diversity cases." 202 F.R.D. at 466 (quoting *McCallum*

---

[3]In *Upjohn,* 449 U.S. at 390 (citing to *City of Philadelphia v. Westinghouse Elec. Corp.*, 210 F. Supp. 483, 485 (E.D. Pa. 1962) (in the context of the attorney-client privilege), the United States Supreme Court adopted the following test for determining whether an individual is a member of an organization's "control group": "that if the employee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority, then, in effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply."

Case 1:08-cv-00053-GEC-mfu   Document 72   Filed 09/09/09   Page 4 of 20   Pageid#: 519

*v. CSX Transp., Inc.*, 149 F.R.D. 104, 108 (M.D.N.C. 1993); *Polycast Tech. Corp. v.Uniroyal, Inc.*, 129 F.R.D. 621, 624-25 (S.D.N.Y. 1990)).

Also as found in *Lewis*, "[t]he general prohibition against an attorney having ex parte contact with a represented party is based on several rationales[,]" including "preventing an attorney from circumventing opposing counsel to obtain unwise statements from an adverse party." 202 F.R.D. at 466 (quoting *Armsey v. Medshares Mgmt. Servs., Inc.*, 184 F.R.D. 569, 573 (W.D. Va. 1998) (internal citations omitted.) The court in *Lewis* found that, given this rationale, a represented corporate party retains an interest in "preventing an opposing attorney from eliciting uncounselled statements from its employees, since such statements could affect the corporation's potential liability." *Lewis*, 202 F.R.D. at 466 (citing *Armsey*, 184 F.R.D. at 573.)

In *Lewis*, the plaintiff filed an action seeking damages from his employer, CSX, for alleged injuries under the Federal Employer's Liability Act, ("FELA"), 45 U.S.C. § 51 *et seq*, after falling from the rear bumper of a CSX truck while working as a signal maintainer. *See* 202 F.R.D. at 465. The plaintiff claimed that CSX was negligent because, prior to his accident, it had knowledge that the rear bumpers on these trucks were slippery and dangerous, but took no corrective action, such as installing nonskid tape on the bumpers. *See Lewis*, 202 F.R.D. at 465. Plaintiff's counsel admitted that he conducted ex parte interviews with various CSX employees, including other signal maintainers and a maintenance shop worker, after the action was filed, concerning the condition of the bumper on the particular truck at issue and other similar trucks and what, if any, complaints they had made to CSX management about the condition of these bumpers prior to the plaintiff's accident. *See Lewis*, 202 F.R.D. at 465. Plaintiff's counsel also admitted that he questioned a maintenance shop

worker regarding the availability of nonskid tape. *See Lewis*, 202 F.R.D. at 465.

This court in *Lewis* held that when one of the parties is a corporation, as is the case here, Rule 4.2 prohibits ex parte communication with:

> (1) persons having managerial responsibility for the corporate party; (2) any other person whose act or omission in connection with that matter may be imputed to the corporate party for purposes of civil or criminal liability; *or* (3) any other person whose statement may constitute an admission on the part of the corporate party.

202 F.R.D. at 465-66 (emphasis added) (citing *Tucker v. Norfolk & W. Ry. Co.*, 849 F. Supp. 1096, 1098 (E.D. Va. 1994) (quoting MODEL RULES OF PROFESSIONAL CONDUCT Rule 4.2 cmt. (1983) and ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991); *Quesenberry v. Norfolk & W. Ry. Co.*, 157 F.R.D. 21, 22 (E.D. Va. 1993)). Under FELA, an employer can be found liable for injury suffered by an employee due to the negligence of a co-worker. *See* 45 U.S.C.A. § 51 (West 2007). It is important to note that, in *Lewis*, the employees with whom the plaintiff's counsel had ex parte contact were the very employees who used and maintained the piece of equipment at issue. In such a case, an admission by any of these co-workers stating that he knew the equipment was defective and that he had taken no action to cure the defect or warn his co-workers would, in fact, be an admission of liability imputable to the employer.

Such is not the case in this matter. In a Title VII sexual harassment case, the employer is subject to vicarious liability only for acts of supervisory employees. *See Reinhold v. Commonwealth of Va.*, 151 F.3d 172, 174-75 (4th Cir. 1998) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998) and *Burlington Indus., Inc.*

-6-

*v. Ellerth*, 524 U.S. 742, 764-65 (1998). That being the case, only an admission by a supervisory employee stating that he took a "tangible employment action" against a plaintiff or that he created a hostile work environment due to her gender would impute liability on the employer. While statements from co-workers regarding the actions of supervisory personnel could be used as evidence to prove that sexual harassment had occurred, those statements, from nonsupervisory personnel, would not be an admission imposing liability on the employer. With this distinction in mind, it appears that the rationale for the *Lewis* decision – to prevent an attorney from circumventing opposing counsel to obtain statements from employees which could be used to impute liability on the employer – is not present in this case.

For all of the above-stated reasons, the court finds that Rule 801(d)(2)(D) in conjunction with Rule 4.2 of the Virginia Rules of Professional Conduct do not prohibit ex parte contact by plaintiffs' counsel with plaintiffs' co-workers, whose statements could not be used to impute liability upon the employee. The same rules, however, do prohibit ex parte contact in this context with any supervisory or managerial employees. Therefore, the court will grant in part and deny in part the Defendant's Motion To Enjoin Ex Parte Contacts.

### B. Plaintiffs' Motion to Enjoin and Restrain

I next will address the plaintiffs' Motion To Enjoin And Restrain, (Docket Item No. 45). In this motion, the plaintiffs contend that counsel for United Salt advised Mitzi Poe, the records custodian for United Salt, not to comply with a subpoena duces tecum served upon her, and which sought compliance by July 31, 2009. I first note that this motion was filed on July 17, 2009, approximately two weeks before the July

-7-

Case 1:08-cv-00053-GEC-mfu   Document 72   Filed 09/09/09   Page 7 of 20   Pageid#: 522

31, 2009, time for compliance. I further note that, under the Federal Rules of Civil Procedure, the appropriate route for obtaining documents belonging to United Salt is a request for production of documents directed to defendant United Salt, not a subpoena duces tecum served on United Salt's records custodian. United Salt responded to this motion on August 5, 2009, (Docket Item No. 53). In its response, United Salt categorically denies any allegation that its general counsel or its litigation counsel ever instructed Poe or any other United Salt employee not to comply with a subpoena. In fact, United Salt attached a letter from its attorney dated July 30, 2009, to plaintiffs' counsel stating that all documents responsive to the subpoena duces tecum were in United Salt's possession and would be produced in response to an identical production request served on United Salt.

Plaintiffs' counsel argues that he has substantial reason to believe that, based on Poe's own statements, Poe, at one time, possessed additional e-mails responsive to both the subpoena duces tecum, and the request for production, but which were not produced. That being the case, the court will order Poe to produce any additional documents within her possession which are responsive to the subpoena by no later than 14 days from the date of entry of this Opinion. The court will further order United Salt to produce any additional documents within its possession which are responsive to the request for production no later than 14 days from the date of entry of this Opinion. In addition, United Salt shall inform the court as to whether United Salt has taken action to ensure that no documents responsive to this document request exist on its corporate computer system in any form.

*C. Plaintiffs' Motions to Quash or Modify Subpoenas*

Next, I will address the plaintiffs' Motions To Quash Or Modify Subpoenas For Production Of Documents, (Docket Item Nos. 51, 57). Specifically, the plaintiffs have moved to quash or modify 27 subpoenas duces tecum seeking various work history records and medical records relating to both plaintiffs as overbroad and as seeking production of information that is neither relevant nor reasonably calculated to lead to the discovery of relevant evidence.

While it is Federal Rule of Civil Procedure 45 that governs modifying or quashing a subpoena in a civil proceeding, the plaintiffs have not even mentioned Rule 45 in their motions. Instead, as the defendant notes in its response, the argument advanced by the plaintiffs, that the information sought in the subpoenas is overbroad and not reasonably likely to lead to the discovery of admissible evidence, is the standard associated with Federal Rule of Civil Procedure 26(b), which establishes the parameters for what information a party is entitled to discover in pretrial preparation.[4] Thus, the defendant contends that the plaintiffs' motions should be construed as ones for a protective order as opposed to motions to quash or modify the subpoenas.

In essence, a party is entitled to information that is relevant to a claim or defense in the matter. Relevance does not mean the information has to be admissible at trial, but merely that the requested information is reasonably likely to lead to the discovery of admissible evidence. Discovery is "broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir.

---

[4]Rule 26(b)(1) states that the parties to a case may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.

2003) (internal citations omitted). The burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted. *See Finley v. Trent*, 955 F. Supp. 642, 648 (N.D. W. Va. 1997) (citing *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992)). It is well-settled that district courts are allowed broad discretion in resolving discovery disputes. *See Carefirst*, 334 F.3d at 402. In *Castle*, 142 F.R.D. at 620, the court concluded that the scope of discovery for a nonparty litigant under a subpoena duces tecum was the same as the scope of a discovery request made upon a party to the action. As United Salt notes in its brief in opposition, a party moving for a protective order bears the burden of proving that good cause exists to prevent or limit discovery. Specifically, the movant must make a particularized showing of why discovery should be denied, and conclusory or generalized statements in a motion for a protective order fail to satisfy this burden as a matter of law. *See Jones v. Circle K Stores*, *Inc.,* 185 F.R.D. 223, 224 (M.D.N.C. 1999); *see also Bell v. Bd. of Educ., Fayette Co.*, 225 F.R.D. 186, 196 (S.D. W. Va. 2004).

Here, the subpoenas were issued to various of the plaintiffs' former employers seeking documents related to the plaintiffs' work histories, including such things as attendance records, work or performance evaluations, reprimands, write-ups, commendations, leave histories, doctor's notes and workers' compensation records, among other things. Also issued were subpoenas to what appear to be temporary staffing agencies, seeking information such as documents and materials presented to employees or individuals retained or identified for placement, including those retained or identified for placement at United Salt, all files related to placement of any employees or individuals at United Salt, all correspondence or documents that relate or refer to Pamela Smith, Gloria Clifton, Michael Foster or United Salt and all files

that relate or refer to any complaints made by any person about United Salt or any of its agents or employees. Finally, also issued were subpoenas to various of the plaintiffs' health care providers seeking the plaintiffs' "complete medical file . . . from the date of January 1, 2001, to the present. . . ." These subpoenas sought information including, but not limited to, all patient and outpatient medical records, including office notes, hospital notes, emergency room notes, patient questionnaires, radiology records and reports, laboratory records and reports, medication lists, diagnosis lists, prescriptions, workers' compensation records or other injury files, photographs and videos and insurance related documents.

I am of the opinion that the plaintiffs have failed to meet their burden of making a particularized showing that the court should prohibit United Salt from discovering their medical records. Specifically, I note that the plaintiffs assert in a conclusory fashion that the subpoenas are overbroad and seek irrelevant information. This does not meet the heavy burden of proof under Rules 26(c) and 45(c). Moreover, the court finds that the plaintiffs' medical records are relevant because in the Complaint, both Smith and Clifton seek to recover damages for severe emotional distress, mental anguish and similar "nonpecuniary" losses. In Count III of the Complaint, both plaintiffs sue United Salt for "intentional infliction of emotional distress." Smith claims that she stopped working upon doctor's advice as a direct result of injuries suffered from the alleged sexual harassment by defendant Michael Foster. According to United Salt's brief in opposition, plaintiff Smith has even identified treating and consultative health care providers who have diagnosed her as suffering from post-traumatic stress disorder and anxiety, all of which she attributes to Michael Foster. That being the case, the court finds that such allegations place the plaintiffs' medical conditions squarely in issue. I agree with United Salt that it must be allowed to review

-11-

the plaintiffs' medical records for evidence of pre-existing or post-employment causes of the plaintiffs' alleged emotional injuries.

As for the plaintiffs' work history records, I find that these also are relevant to the claims before the court. Again, the plaintiffs have failed to make a particularized showing as to why these subpoenas should not issue, instead advancing the conclusory argument that they are overbroad and irrelevant. However, as discussed above, this does not suffice to make the "good cause" showing necessary for the issuance of a protective order under Rule 26(c). Moreover, I am of the opinion that such records are relevant because they could potentially reveal such information as prior complaints of emotional distress and sexual harassment. Also, as United Salt notes in its brief in opposition, past employment records could reveal that the plaintiffs have "poor or erratic work histories, including long intervals of voluntary unemployment." In addition, plaintiffs' records of sustained employment or unemployment are important since the plaintiffs seek to recover awards of front pay, as opposed to reinstatement to United Salt. However, such claims for future wages rest on the assumption that, but for the alleged harassment and resulting distress, they would have remained working at United Salt until retirement. That being the case, as United Salt argues, prior and subsequent employment records could demonstrate that the plaintiffs do not remain at any job for long. In addition, the subpoenas could generate evidence that the plaintiffs have acquired "strong, transferrable vocational skills" in their prior jobs. Such evidence could be important to United Salt's affirmative defense that the plaintiffs have failed to mitigate their damages. In particular, the more skilled these plaintiffs are, the faster they should be able to find alternative employment.

For all of these reasons, I find that the records of plaintiffs' prior employers

could lead to the discovery of facts relevant to the parties' claims and defenses. For the reasons stated herein, I will deny the plaintiffs' Motions To Quash Or Modify Subpoenas For Production Of Documents, (Docket Item Nos. 51, 57).

The defendant seeks attorney's fees and expenses incurred in opposing this motion, pursuant to Federal Rule of Civil Procedure 37, which relates to failure to make disclosures or to cooperate in discovery. Rule 37 provides that if the motion is denied, "the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(B). In this instance, I find the award of expenses to United Salt would be unjust. Therefore, I will deny United Salt's request for fees and expenses incurred.

### D. *Plaintiffs' Motion for Finding of Contempt and to Compel Discovery*

I next will address the plaintiffs' Motion For Finding Of Contempt And To Compel Discovery, (Docket Item No. 55). In this motion, the plaintiffs contend that Lisa Foster, the estranged wife[5] of defendant Michael Foster, appeared at a deposition subject to subpoenas seeking both testimony and certain documents, but she refused to answer many questions asked of her and she refused to produce any documents. The plaintiffs have filed the entire transcript of the deposition with their motion for

---

[5] At the September 1 hearing, Lisa Foster clarified that she was not estranged from her husband defendant Michael Foster.

-13-

the court's review. In particular, Lisa Foster responded to several questions by reading the following prepared statement: "I [in]voke the marital privilege which protects me against adverse spousal testimony." Plaintiffs' counsel asks that the court find Lisa Foster in contempt, that the court oversee the resumed deposition of Lisa Foster and that the court award attorney's fees and court costs incurred as a result of Lisa Foster's failure to comply with the subpoenas, including the court reporter's fee for the preparation of the deposition transcript in the amount of $412. Lisa Foster appeared pro se at the September 1 hearing and spoke in opposition to the defendant's motion.

In a civil case based on a federal cause of action, as here, questions of privilege are governed by federal common law as interpreted by the court "in the light of reason and experience." *Hawkins v. Stables*, 148 F.3d 379, 382 (4th Cir. 1998) (quoting FED. R. EVID. 501). The federal courts have recognized two distinct marital privileges under Federal Rule of Evidence 501.[6] The first is the adverse testimony privilege, whereby one spouse may not be compelled to testify against the other on any subject in a criminal proceeding, and which may be invoked only by the spouse from whom testimony is sought. *See Trammel v. United States,* 445 U.S. 40, 53 (1980). Thus, a spouse who voluntarily chooses to provide adverse testimony may do so. The second marital privilege is the confidential communications privilege, whereby confidential statements between spouses are inadmissible. *See Blau v. United States*, 340 U.S. 332, 333 (1951); *Wolfle v. United States*, 291 U.S. 7, 14 (1934). The real issue before

---

[6]Rule 501 states as follows: ". . . [t]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

this court is whether these marital privileges apply in civil proceedings. I find that while the confidential communications privilege applies in civil proceedings, the adverse spousal testimony privilege applies only in criminal cases. *See Secs. & Exch. Comm'n v. Lavin*, 111 F.3d 921 (D.C. Cir. 1997) (upholding objection to subpoena in civil case brought on federal claims on basis of confidential marital communications privilege); *Ryan v. Comm'r of Internal Revenue*, 568 F.2d 531, 544 (7th Cir. 1977) (holding the rationale underlying the adverse spousal testimony privilege is not applicable in the civil context); *see also* 3-505 Weinstein's Federal Evidence § 505.09. The court notes that although Lisa Foster stated that she was invoking the adverse spousal testimony privilege, this privilege does not apply in civil proceedings, as here.

The court next will address the issue of whether the marital communications privilege applies to the case at bar. In *Wolfle*, 291 U.S. at 14, the United States Supreme Court recognized the privilege in confidential marital communications and noted that the basis of the privilege, the protection of confidential marital communications, was "so essential to the preservation of the marriage relationship as to outweigh the disadvantages of the administration of justice which the privilege entails." (internal citations omitted). The *Wolfle* court also noted that marital communications are presumed to be confidential, but if the nature and circumstances surrounding the communications show that it was not intended to be confidential, then the communication is not privileged. *See* 291 U.S. at 14. Specifically, communications which are made in the presence of a third party are not confidential and thus, are not privileged. *See* 291 U.S. at 14. Likewise, the Fourth Circuit has recognized that "[i]nformation that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged." *United States v. Parker*,

-15-

834 F.2d 408, 411 (4th Cir. 1987) (citing *Blau*, 340 U.S. at 333; *see also United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995).

The subpoena at issue seeks correspondence with Michael Foster from January 1, 2008, to the present. Lisa Foster testified that she did not have any such documents. She brought a file folder containing some type of documents with her to her deposition, but she stated merely that these were her personal belongings. When asked whether she had any of the documents in the room with her that were described in the subpoena, she again stated: "I [in]voke the marital privilege which protects me against adverse spousal testimony." The subpoena also seeks Lisa Foster's telephone records from June 1, 2008, to the present. At her deposition, Lisa Foster provided the name of her cellular service carrier and her cellular telephone number, but she provided no documents as commanded in the subpoena. The subpoena also sought all photographs of Michael Foster taken from January 1, 2005, to the present. At the hearing, plaintiffs' counsel conceded that there was no longer any need to obtain these photographs since Michael Foster had been served.

The court first observes that Lisa Foster never explicitly invoked the confidential marital communications privilege, only the adverse spousal testimony privilege. Nonetheless, the court finds that it was her intention to do so. That being said, the court is hard-pressed to find that the requested telephone records would constitute a confidential marital communication because they simply are not communications between husband and wife. Instead, they contain information such as locations called, the time called, the duration of the call and the telephone number called. Therefore, the court will order Lisa Foster to produce these records.

Furthermore, while the requested correspondence between Lisa Foster and Michael Foster might qualify for protection under this privilege, it is impossible for the court to make such a determination without first reviewing the correspondence. For instance, if any such correspondence was shared with third parties, the confidential presumption would be overcome. Also, any correspondence in the form of e-mails could be deemed not to fall within the privilege if it was sent using a work e-mail account on a work computer on which third parties had privileges to monitor such correspondence. *See Sprenger v. Rector & Bd. of Visitors of Va. Tech*, 2008 WL 2465236 (W.D. Va. Jun. 17, 2008). In essence, the circumstances surrounding the communication determine whether it is confidential or not. If it is not confidential, then it simply is not privileged. Therefore, the court will order Lisa Foster to produce this correspondence. Should she have specified correspondence that she believes is covered by the confidential marital communications privilege, she should provide a list of this correspondence to counsel and submit the correspondence to the court for ex parte in camera review. As instructed at the hearing, counsel may reconvene Lisa Foster's deposition on a date and time agreed upon by the parties.

### *E. Cross Motions to Compel*

This matter is before the court on plaintiffs' Motion To Compel, (Docket Item No. 25) ("Plaintiffs' Motion to Compel"). At the hearing, United Salt's counsel agreed to supplement United Salt's disclosures and answers to interrogatories to include contact information and dates of birth for United Salt employees Bobby Blevins, Eddie Boardwine and Mitzi Poe. Based on the arguments and representations of counsel, Plaintiffs' Motion to Compel will be, otherwise, denied. The motion is specifically denied insofar as it seeks to compel United Salt to provide copies of any

-17-

documents concerning an investigation by in-house legal counsel of Smith's and Clifton's allegation of sexual harassment, including Joseph Pribyl's memorandum to counsel concerning Michael Foster's termination. The court finds that these documents are protected from production under the attorney-client privilege. *See In re Allen*, 106 F.3d 582, 603 (4th Cir. 1997) (facts gathered through attorney's investigation related to rendering legal services protected by attorney-client privilege). The motion also is denied insofar as it seeks to compel United Salt to produce copies of notes created by Pribyl, United Salt's director of human resources, regarding workers' compensation and disability claims filed by Smith based on the court's finding that these notes are protected from production under the work-product doctrine. *See* FED. R. CIV. P. 26(b)(3)(A)-(B).

This matter also is before the court on Defendant United Salt Corporation's Motion To Compel, (Docket Item No. 58) ("United Salt's Motion to Compel"). At the hearing, plaintiffs' counsel agreed to supplement the plaintiffs' answers to interrogatories to include information regarding any complaints of harassment, discrimination or retaliation made by these plaintiffs to any of their former employers. Based on the arguments and representations of counsel, United Salt's Motion to Compel will be granted in part and denied in part. The motion is granted insofar as the plaintiffs shall supplement their answers to interrogatories to identify and provide contact information for any healthcare provider who has treated them within the past 10 years. The plaintiffs also shall supplement their response to requests for production of document to provide for copies of all awards, correspondence or documents they or their representatives provided to or received from the Virginia Workers' Compensation Commission. Smith shall supplement her answer to Interrogatory No. 6 to provide the addresses and telephone numbers of any persons listed in her answer

-18-

who is not a current employee of United Salt. Clifton shall supplement her answer to Interrogatory No. 8 to provide the addresses and telephone numbers of any persons listed in her answer who is not a current employee of United Salt. Other than as set out above, United Salt's Motion to Compel will be denied.

*F. Michael Foster's Motion for Extension of Time*

This matter also is before the court on a motion for extension of time filed by the defendant Michael Foster acting pro se, (Docket Item No. 62). The motion seeks an extension of time to respond to discovery requests served by mail on him on July 30, 2009. Subsequent to filing this motion, Foster filed his discovery responses with the court on August 31, 2009, (Docket Item No. 63). Therefore, the motion for extension will be denied as moot in that Foster's discovery responses were filed in a timely manner pursuant to Federal Rules of Civil Procedure 6(d) and 33(b)(2).

*III.*

For all of the reasons stated within this Memorandum Opinion, the Defendant's Motion To Enjoin Ex Parte Contacts, (Docket Item No. 30), will be granted in part and denied in part, the plaintiffs' Motion To Enjoin And Restrain, (Docket Item No. 45), will be granted in part and denied in part, the plaintiffs' Motions To Quash Or Modify Subpoenas For Production Of Documents, (Docket Item Nos. 51, 57), and the plaintiffs' Motion For Finding Of Contempt And To Compel Discovery, (Docket Item No. 55), will be granted in part and denied in part, the parties' cross motions to compel, (Docket Item Nos. 25, 58), will be granted in part and denied in part, and the motion for extension filed by Michael Foster, (Docket Item No. 62), will be denied.

-19-

Case 1:08-cv-00053-GEC-mfu   Document 72   Filed 09/09/09   Page 19 of 20   Pageid#: 534

An appropriate order will be entered.

The Clerk shall certify a copy of this Order to all counsel of record and unrepresented parties.

**ENTER:** September 9, 2009.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE